**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **BERKEL & COMPANY CONTRACTORS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-9176-JAR** |
| | ) | |
| **LIBERTY MUTUAL INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is Defendant Liberty Mutual Insurance Company's ("Liberty") Motion to Transfer (Doc. 11) this case to the United States District Court for the Western District of Pennsylvania. The Court has considered the briefs, as well as the evidence submitted with the briefs, and is prepared to rule. As described more fully below, the Court denies Defendant's motion.

**I.      Background**

Plaintiff Berkel & Company Contractors, Inc. ("Berkel") is a Kansas corporation authorized to do business in Pennsylvania.  Defendant Liberty Mutual Insurance Company ("Liberty") is a Massachusetts stock insurance company.  Defendant is licensed and authorized to do business in Kansas.  Plaintiff filed suit against Defendant in the District Court of Wyandotte County on June 17, 2015, alleging two claims: (1) a claim on payment bond, and (2) bad faith refusal to pay.  Defendant filed a Notice of Removal in this Court on July 21, 2015, based on 28 U.S.C. §§ 1332 and 1441.

The claims at issue arose from a public construction project in McKeesport, Pennsylvania.  On June 28, 2011, Galway Bay Corporation ("Galway"), a Pennsylvania corporation, entered into a contract with the Municipal Authority of the City of McKeesport, Pennsylvania ("Municipal Authority"), in order to improve the City of McKeesport sewer system.  In accordance with Pennsylvania law, Galway executed a statutory payment bond with Defendant acting as surety to the Municipal Authority as obligee.

Galway entered into a subcontract with Plaintiff in which Plaintiff agreed to perform construction work including installing auger piles and rebar.  The final subcontract price was $1,233,575.00.  Galway has paid Plaintiff $948,117.80, leaving an outstanding balance of $285,457.20.  Galway informed Plaintiff that final payment would be made after completion of the project to ensure credits and additions under the subcontract were satisfied.  Following completion of the project, Plaintiff made several requests for payment to Galway which were denied.  On November 12, 2014, Plaintiff made a demand on Defendant on the statutory payment bond.  Defendant denied the claim on March 20, 2015.

Defendant asserted the Pennsylvania statute of limitations barred the claim because Plaintiff's work on the project was completed by July 23, 2012, and the one-year statute of limitation began to run no later than October 21, 2012.  Plaintiff then filed this action on June 17, 2015.  Defendant answered, alleging two affirmative defenses: (1) Plaintiff's claims are barred by the statute of limitations, and (2) Plaintiff's claims against Defendant are barred in whole or in part by the doctrine of recoupment or set-off  because the Municipal Authority is claiming a credit on the contract with Galway, based on the quality of Plaintiff's work on the project.

Defendant moved to transfer this action to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1404(a).  In support, Defendant provided the Affidavit of Gregory R. Maynard, the President of Galway.[1]  Maynard identified numerous non-party witnesses residing in Pennsylvania and two party witnesses residing in Illinois and Kentucky, respectively.[2]  Maynard also noted most of the relevant documents concerning the case were located in Pennsylvania.[3]

## II.    Discussion

The purpose of 28 U.S.C. § 1404(a) is to permit easy change of venue within a unified federal judicial system.[4]  Pursuant to § 1404(a), a court may transfer a case to any other district or division where it might have been brought originally for "the convenience of parties and witnesses" and "in the interest of justice."[5]  The party seeking the transfer bears the burden of demonstrating that transfer is appropriate and that the balance of considerations tilts strongly in its favor.[6]  "The court bears in mind that transfer is not appropriate if the result is merely to shift the inconvenience from one party to another."[7]

The decision whether to grant a party's motion to transfer is within the sound discretion of the district court.[8]  A court has the discretion under § 1404(a) to adjudicate transfer motions according to an individualized, case-by-case consideration of convenience and fairness.[9]  Among the factors to be considered by a court are:

---

[1]Doc. 12-1.

[2]Maynard Aff., Doc. 12, Ex. A at 2−14.

[3]*Id.*

[4]*Hill's Pet Prods. v. A.S.U., Inc.*, 808 F. Supp. 774, 776 (D. Kan. 1992) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)).

[5]28 U.S.C. 1404(a).

[6]*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

[7]*United Nat'l Ins. Co. v. Sturdevant*, No. 09-2514-CM, 2010 WL 1336309, at *2 (D. Kan. Mar. 30, 2010).

[8]*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

[9]*Id.*

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[10]

The Court examines each factor in turn, in considering whether this case should be transferred from its current trial location of Kansas City, Kansas.

### A.  Plaintiff's Choice of Forum

Plaintiff has chosen the District of Kansas as the forum for its action against Defendant. A plaintiff's choice of forum is rarely disturbed.[11]  The choice, however, is not absolute.[12] Courts "accord little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[13]

Plaintiff's cause of action is based on a denied claim for payment under a Pennsylvania statutory payment bond based on construction work Plaintiff completed under a sub-contract for a public works project in Pennsylvania.  Thus, it would appear most of "the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[14] Additionally, few, if any, potential witnesses with knowledge of the asserted claims reside in Kansas, including all witnesses Plaintiff identified in its initial disclosures.

Plaintiff argues the facts giving rise to the lawsuit have significant relation to Kansas because the suit involves money due to Plaintiff in Kansas.  While Defendant accurately notes the payment may not have been due in Kansas, the location where payment was due is not

---

[10]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).
[11]*Id.*
[12]*Buford v. First Sunset Dev., Inc.*, No. 95–1075, 1995 WL 396608, at *5 (D. Kan. June 9, 1995).
[13]*Bartile*, 618 F.3d at 1168.
[14]*Id.*

dispositive of this factor.  In order for Plaintiff to prove money was due, regardless of where the payment would be sent, Plaintiff must provide factual support concerning contractually complete performance of the project in Pennsylvania.  As such, Plaintiff's choice of forum is entitled to less deference because the facts giving rise to the lawsuit occurred in Pennsylvania and lack a material or significant relation to Plaintiff's chosen forum, Kansas.  This factor weighs in favor of transfer.

### B.  Accessibility of Witnesses and Other Sources of Proof

The accessibility of witnesses, both party and non-party, is an important factor in a section 1404(a) analysis.  In this circuit, the convenience of witnesses is the single most important factor in deciding a motion to transfer.[15]  The movant has the burden to demonstrate inconvenience by: (1) identifying the witnesses and their locations; (2) indicating the materiality of their testimony; and (3) showing that the witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.[16] The distinction between party and non-party witnesses is a critical one.[17]  Non-party witnesses cannot be compelled to testify if they reside outside the subpoena power of the court.[18] Party witnesses, on the other hand, are "presumptively under the control of the party desirous of presenting their testimony."[19]  This Court has previously held that a defendant should not be forced to present a substantial portion of its case by deposition.[20]

Defendant identifies a number of witnesses who reside outside of Kansas: 1) engineers and inspectors for KHL Engineers, Inc., which provided services at the project on behalf of the

---

[15]*Id.* (citing *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).
[16]*Id.*
[17]*Amwest Sur. Ins. Co. v. Guarantee Elec. Constr. Co.*, No. 00–2196, 2000 WL 1310512, at *6 (D. Kan. Aug.21, 2000).
[18]*Id.*
[19]*Id.*
[20]*Cook*, 816 F. Supp. at 669.

Municipal Authority, all who reside in Pennsylvania; 2) employees of Galway who reside in Pennsylvania; 3) claims counsel for Liberty who resides in Illinois; 4) employees of Berkel who have knowledge of the project, and live in Kentucky; and 5) an officer and superintendent of the Municipal Authority who reside in Pennsylvania.[21]  Defendant contends the quality and materiality of these witnesses residing outside the subpoena power of the District of Kansas may prove critically important to Plaintiff's claims and Defendant's affirmative defenses.[22] Specifically, while Plaintiff alleges the last date that work was completed will not be disputed, the quality of work Plaintiff performed will likely be hotly contested, and Defendant's recoupment defense is a highly factual question.  Defendant alleges Plaintiff failed to adequately perform under the subcontract which caused the Municipal Authority to withhold contractual payments from Galway, who in turn withheld payments from Plaintiff.[23]  Defendant urges this defense will require testimony from non-party witnesses residing outside of Kansas, specifically Municipal Authority, Galway, and KLH Engineers, Inc. employees.[24]  These non-party witnesses would be needed to provide testimonial evidence concerning Plaintiff's performance and right to payment.  By contrast, there are no non-party witnesses located in Kansas.[25]

    Nonetheless, the Court concludes that Defendants have not shown that the majority of key witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.  The Court will not presume that the out-of-state witnesses will not voluntarily come to trial, especially given that these witnesses appear to have employment, contractual, or business relationships with Defendant, which could create the necessary incentive to participate in the litigation.  Defendant has not demonstrated

---

[21] Maynard Aff., Doc. 12, Ex. A at 2−4.
[22] *Id.*
[23] Doc. 8 at 5.
[24] Maynard Aff., Doc. 12, Ex. A.
[25] *Id.*

that it will be hampered by asserting its statute of limitations and recoupment defenses by virtue

of proceeding in this venue.  Both parties have witnesses located in their respective districts.  As

previously noted, merely shifting the inconvenience from one side to the other is not permissible

justification to change the venue.[26]  Thus, this factor weighs against transfer.

As for location of relevant documents, the Court agrees with Plaintiff that "in this era of

electronically stored and transmitted information, the location of relevant documents (however

voluminous) may carry significantly less weight in the section 1404(a) analysis."[27]  Defendant

has offered no evidence as to why the documents or other tangible evidence in this case would be

difficult to produce in this forum, and thus the accessibility of sources of proof is neutral.

### C.  Cost of Making Necessary Proof

For the convenience of non-party witnesses residing outside of Kansas, it would appear

the cost of making necessary proof is greater in the District of Kansas because of expenses these

non-party witnesses would incur in travelling to Kansas from Pennsylvania.  Plaintiff is correct,

however, that Defendant did not offer evidence concerning the potential costs of litigating the

case in the current forum.  Defendant did provide a list of non-Kansas witnesses who would be

forced to incur substantial expense in travelling to Kansas to assist Defendant in making the

necessary proof.  As the Court noted, however, Defendant has not demonstrated that the

resolution of this case will require that witnesses provide live testimony or that voluminous

documents will need to be transported.  Given a lack of evidence concerning the cost of making

necessary proof in Kansas, this factor weighs against transferring venue.

---

[26]*Bartile*, 618 F.3d at 1167.
[27]*Zurich Am. Ins. Co. v. Acadia Ins. Co.*, No. 15-cv-1273-CMA-CBS, 2014 WL 3930487, at *6 n.5 (D. Colo. Aug. 12, 2014).

### D.  Difficulties from Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[28]  This factor is heavily dependent on statistics comparing the relative administrative burdens of each concerned court.  Defendant contends the Western District of Pennsylvania has a lower median time from filing to disposition, pending cases per judge, and average weighted filings per judge.[29]  In fact, the number of average weighted filings per judge in the District of Kansas is almost double the amount in the Western District of Pennsylvania.  While Plaintiff argues Defendant has failed to show the docket is unduly congested or would impede the resolution of this case, three of the four relevant statistics illustrate the District of Kansas has a more congested docket than the Western District of Pennsylvania.  Thus, the District of Kansas would face a greater administrative burden in litigating this case, suggesting this factor also weighs in favor of transfer.

### E.  Conflict of Law Questions

Because this is a diversity action and Kansas is the forum state, the substantive laws of Kansas will apply, including its choice of law rules.[30]  Federal courts prefer that such diversity actions be adjudicated by a court sitting in the state that provides the governing substantive law.[31]  In terms of its relative importance in deciding a motion to transfer venue, this factor

---

[28]*Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1257 (D.N.M. 2013).
[29]Doc. 12 at 11.
[30] *Bartile*, 618 F.3d at 1169.
[31] *Id.*

receives less weight because the legal issues in this case—statute of limitations and breach of contract—appear to be uncomplicated and the Court is qualified to apply relevant state law.[32]

The parties devote much discussion to the conflict of law factor.  In particular, the parties disagree on which states' statute of limitations would apply to the case.  While the statute of limitations argument need not be decided here, it is important to note either court would have to conduct an analysis of the other's statute of limitations.  Defendant is correct in noting Kansas recognizes an exception to the general rule that Kansas' statute of limitations applies even if the case is transferred when the foreign statute contains a statute of limitations or is so closely related to a statute of limitations that it could be said to be "built in" to the statute.[33]  Likewise, if the case is transferred to Pennsylvania, that court would engage in a statutory analysis to determine if the statute contained such a provision and if not, would apply the Kansas statute of limitations.  If the case remains in Kansas, this Court would likely conduct the same analysis if either party alleges the Pennsylvania statute concerning statutory payment bonds is relevant to the issues at hand.  Thus, it is clear either court would engage in a conflict of law analysis to determine which states' statute of limitations would govern.  Regardless of whether the case is transferred, either forum would likely find applying a different state's statute of limitations is a relatively simple legal issue.  As such, this factor does not weigh in favor of transfer.

### F.  Advantages of Having Local Court Determine Questions of Local Law

The parties also disagree on which state has a greater interest in adjudicating a claim on a statutory bond issued in accordance with Pennsylvania law.  Defendant argues Pennsylvania law would apply to Plaintiff's claim under the statutory payment bond.  When the merits of an action

---

[32] *See id.*

[33] *Muzingo v. Vaught*, 859 P.2d 977, 979 (Kan. Ct. App. 1993); *Garcia v. Int'l Elevator Co.*, 358 F.3d 777, 779 (10th Cir. 2004).

are unique to a particular location, courts favor adjudication by a court sitting in that location.[34] Based on the limited record before the Court, the central legal issue in this case does not appear to revolve around the bond, but rather, factual questions concerning Plaintiff's contractual performance on a Pennsylvania public works project.  As such, the Pennsylvania statute outlining the creation of the statutory bond is not particularly relevant to the legal issues posed by either party.  This Court is well-versed in contract law, and Defendant has not indicated that there is a substantial difference in the local law such that there is any disadvantage to having the District of Kansas consider those claims.  As such, this factor is neutral.

## III.   Conclusion

Having weighed all of the relevant factors under section 1404(a), the Court declines to grant Defendant's motion to transfer this case.  The Court finds that Defendant has failed to demonstrate that Plaintiff's chosen forum—Kansas—is sufficiently inconvenient to justify disturbing Plaintiff's choice, or that transfer to the Western District of Pennsylvania is warranted and will promote the interest of justice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Transfer (Doc. 11) is DENIED.

**IT IS SO ORDERED.**

Dated: <u>December 21, 2015</u>

       S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[34]*See Black & Veatch Constr., Inc. v. ABB Power Generation Inc.*, 123 F. Supp. 2d 569, 581 (D. Kan. 2000).

10